# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re: | **Bankruptcy Case** |
| **VIRGIL ARTHUR WOOD,** | **No. 13-40092-JDP** |
| **Debtor.** | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Ryan E. Farnsworth, AVERY LAW, Idaho Falls, Idaho, Attorney for Debtor.

    Kathleen A. McCallister, Boise, Idaho, Chapter 13 Trustee.

### *Introduction*

    This decision addresses two motions filed in this chapter 13[1] case.

Chapter 13 trustee Kathleen A. McCallister ("Trustee") has filed a motion

to dismiss this case in which she alleges that debtor Virgil Wood

_____

    [1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

("Debtor") has failed to make the payments required under the terms of his confirmed plan.  Dkt. No. 92.  Debtor opposes dismissal, and to remedy his alleged payment defaults, Debtor filed a Motion to Modify Plan ("the Modification").  Dkt. No. 95.  Trustee objected to the Modification.  Dkt. No. 99.

The Court conducted an evidentiary hearing and heard oral argument concerning both motions on November 3, 2015, at the conclusion of which the Court instructed Debtor's counsel to file a brief to further explain and support Debtor's position.  *See* Minute Entry, Dkt. No. 113. Debtor filed the brief, and Trustee filed a reply brief.  Dkt. Nos. 114, 115. Having considered the evidence, testimony, briefs and arguments of the parties, this Memorandum constitutes the Court's findings of fact and conclusions of law, and disposes of both motions.  Fed. R. Bankr. P. 7052; 9014.

### *Facts*

On January 30, 2013, Debtor and his spouse, Peggy Wood,

MEMORANDUM OF DECISION – 2

("Peggy",[2] and collectively "the debtors") filed a chapter 13 bankruptcy

petition.  Dkt. No. 1.  In their first two proposed plans, the debtors offered

to surrender an older 38 foot boat and trailer ("the Boat") to the secured

creditor holding a lien on the Boat.  Dkt. No. 11, ¶ 6.2; Dkt. No. 22, ¶ 6.2.

However, later in the case, in a proposed second amended plan, the

debtors elected to retain the Boat and to make 60 monthly payments to the

creditor on its secured claim of $416.60, for a total of $24,996, over the

course of their plan.  Second Amended Plan, Dkt. No. 25, at ¶¶ 5.1, 6.2.[3]

The plan also provided for monthly payments of $98.42 to the same

secured creditor so the debtors could retain a small tractor.  *Id.* at ¶ 5.1;

Claims Reg. No. 8-1.  With Trustee's support, on May 20, 2013, the debtors'

second amended plan was confirmed obligating them to make total

---

[2] Reference to Ms. Wood by her first name is for clarity; no disrespect is
intended.

[3] This plan treatment is based upon an allowed secured claim for the
creditor of $21,165, plus 6.75% interest.  Presumably, this amount is based upon
the value listed for the Boat in the secured creditor's proof of claim, which
also indicates the total balance due on the claim is in excess of $37,000.  Claims Reg.
No. 9-1 at 1-2.

MEMORANDUM OF DECISION – 3

monthly payments of $1,737 to Trustee over the next five years.  Order

Confirming Chapter 13 Plan, Dkt. No. 41.

In February, 2014, the debtors submitted an "Application to

Purchase Automobile" ("App. to Purchase") to Trustee.  Exh. 204.  In it,

they sought Trustee's approval of their purchase of a 2008 Dodge Durango

on credit, ostensibly because Debtor would likely be losing access to his

work vehicle, and the debtors both needed vehicles to get to their jobs.  *Id*.

Trustee alleges that while she agreed to this purchase, she noted on the

App. to Purchase that her assent to the debtors' proposal came with a

condition:  that they thereafter propose "no decrease in plan payments – or

mortgage payments." *Id*.[4]

Shortly thereafter, on March 28, 2014, the holder of the debtors'

home mortgage filed a "Motion for Court Approval of Loan Modification

Agreement" asking the Court to approve a modification of the debtors'

loan agreement to lower the interest rate and reduce their monthly

---

[4] The App. to Purchase was not filed with the Court, and the confirmed
plan was not modified to reflect the debtors' acquisition of, and payments for,
the Durango.

MEMORANDUM OF DECISION – 4

mortgage payments by $528.38.  Dkt. No. 52.  Debtor testified at the

hearing that this mortgage modification was negotiated with the mortgage

lender to provide the debtors the extra funds needed to make the Durango

payments.  Trustee did not object, and there being no other objections to

the motion, on August 22, 2014, the Court entered an order approving the

loan modification.  Dkt. No. 57.  The loan modification was implemented

and the debtors' monthly mortgage payments were reduced.

Beginning in early February 2015, a flurry of activity occurred in the

chapter 13 case.  It seems that, at about that time, Debtor and Peggy

separated; on February 11, 2015, Peggy filed a notice of change of address

with the Clerk signaling that she was no longer living at the debtors'

former residence.  Dkt. No. 66.  Then, on August 18, 2015, Peggy filed a

Motion to Bifurcate the chapter 13 case.  Dkt. No. 86.  Without objection

from Trustee, the Court granted the bifurcation motion on September 10,

2015, Dkt. Nos. 90 and 91, and a separate bankruptcy case was opened for

her.  *See In re Peggy Diane Wood*, Case No. 15-40882-JDP.  On October 5,

2015, Peggy's case was converted to a chapter 7 case.

MEMORANDUM OF DECISION – 5

On February 8, 2015, Debtor filed amended schedules I and J to reflect the changes to income and expenses resulting from Peggy's departure. Dkt. No. 64. The amended schedule I indicated a decrease in monthly income of $1,807. The amended schedule J reflected a decrease in Debtor's monthly expenses, including those for telephone/cell phone/internet/satellite service, food and housekeeping supplies, medical and dental expenses, and transportation, as well as elimination of the car payment on the Durango. The amended schedule J also showed increases in Debtor's expenses for clothing, laundry, and dry cleaning, entertainment, haircuts and gifts. All told, Debtor's expenses decreased by $1,145. Dkt. Nos. 1, 51, 64.

On February 8, 2015, Debtor also filed a motion to modify the confirmed chapter 13 plan proposing that he pay the reduced amount of $1,075 per month for the remainder of the plan, a figure presumably attained by subtracting the expenses reflected in Debtor's amended schedule J, $3,384, from Debtor's sole income under the amended schedule I, $4,459. Dkt. No. 62. Trustee objected to this motion, Dkt. No. 67, and, at

MEMORANDUM OF DECISION – 6

a May 6, 2015 hearing, Debtor withdrew the motion.  *See* Minute Entry,

Dkt. No.  79.  Despite withdrawing the motion to modify, however, Debtor

began making the reduced $1,075 monthly payment to Trustee.[5]

On September 11, 2015, following his first reduced payment, Trustee

filed the Motion to Dismiss based upon Debtor's failure to make the full

amount of the plan payments.  Dkt. No. 92.  Debtor did not object to

Trustee's motion, and instead responded on September 24, 2015, by filing

the Modification.  Dkt. No. 95.  The Modification again proposes to reduce

Debtor's plan payments from $1,737 to $1,075, with an additional $230 per

month to be paid for the remaining 32 months of the plan term to cure the

accrued arrearages.  *Id*.

### *Analysis and Disposition*

A.  Trustee's Motion to Dismiss

The Court first briefly addresses Trustee's dismissal motion based

---

[5]  While Debtor has continuously made the reduced payment, on August
13, 2015, at Trustee's request, the Clerk issued a wage order to Debtor's employer
requiring that a total of $1,764 be deducted from Debtor's monthly pay.  Dkt. No.
84.  This wage order was vacated by stipulation of the parties on November 17,
2015.  Dkt. No. 116.

MEMORANDUM OF DECISION – 7

upon Debtor's failure to make the full amount of the required payments.

Debtor does not dispute that, while the confirmed plan calls for payments

of $1,737 per month, since September 2015, Debtor has made monthly

payments of $1,075.  As a result, Debtor is in default under the terms of the

confirmed plan.

Clearly, Debtor made a reckless decision to unilaterally reduce his

payments absent an order modifying the terms of the confirmed plan.  A

material default by a debtor with respect to a term of a confirmed plan

may constitute adequate cause to dismiss a chapter 13 case.  § 1307(c)(6).

Even so, under these facts, in the exercise of its discretion, the Court

declines to dismiss the case.  *Ellsworth v. Lifescape Med. Assocs., P.C. (In re*

*Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011) (the bankruptcy court's

dismissal of a chapter 13 case is reviewed for an abuse of discretion); *In re*

*Cluff,* 2012 WL 1552391 *3 (Bankr. D. Idaho Apr. 30, 2012).  Debtor

experienced a significant change in his personal and financial

circumstances following his separation from his spouse.  Given this

unfortunate development, the critical inquiry here is whether the amount

MEMORANDUM OF DECISION – 8

of the monthly plan payments ought to be adjusted to accommodate

Debtor's new circumstances.  Debtor has a good job and a steady income,

desires to complete the plan and, if possible, receive a discharge, and while

a change in the plan payment amount may or may not be warranted,

dismissal is not appropriate at this time even though Debtor has failed to

make adequate payments to Trustee.

B.  Debtor's Motion to Modify Plan

Debtor argues that because his spouse's income is no longer

available to make plan payments,[6] a modification is necessary to reduce

the payment to reflect his changed income and expenses.  Trustee

disagrees, generally contending that Debtor should adjust his standard of

living and continue the present payments, rather than ask unsecured

---

[6] According to Debtor, after the plan was confirmed, Peggy decided to retire from her job.  The amount she receives each month via Social Security and retirement benefits is roughly equal to her income prior to her retirement.  But regardless of the source and amount of her income, Debtor and Peggy separated and are estranged, and as a result, her income is no longer available to Debtor to make plan payments.  While Debtor testified he hopes to eventually reconcile, as a practical matter, because Peggy and Debtor no longer reside together, and she has elected to abort the chapter 13 case in favor of her own chapter 7 case, Debtor' situation must be analyzed under the Code as though he were single.

MEMORANDUM OF DECISION – 9

creditors to sacrifice the difference.  More specifically, Trustee makes three arguments in opposition to the Modification: (1) that based upon events surrounding Trustee's approval of the App. to Purchase of the Durango, Debtor should be estopped from proposing a modification to reduce his plan payments; (2) that while his circumstances have changed, Debtor's revised expenses are excessive and many exceed IRS allowances, and he still has the ability to make the original plan payments; and (3) that the Modification has not been proposed in good faith because Debtor intends to retain and pay for "luxury" goods through the modified plan.

The legal foundation for the Modification is § 1329(a)(1), wherein the Code allows a confirmed plan to be modified to increase or decrease the amount of payments, provided the modified plan complies with the general confirmation requirements of § 1325(a).  § 1329(a)(1); *In re Defrehn*, 03.3 IBCR 174, 176 (Bankr. D. Idaho 2003).  As the moving party, Debtor bears the burden of showing facts sufficient to demonstrate that a plan modification is warranted.  *In re Hall*, 10.3 IBCR 77, 77-78 (Bankr. D. Idaho 2010).  However, in contrast to the rules for confirmation of the debtors'

MEMORANDUM OF DECISION – 10

second amended chapter 13 plan, the adequacy of the monthly payments proposed in the Modification need not satisfy the "projected disposal income" requirements of § 1325(b). *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 781 (9th Cir. BAP 2005).

Against this legal backdrop, the Court will consider each of Trustee's arguments opposing the Modification.

### 1. Estoppel

Trustee first argues that, because of the circumstances surrounding the debtors' post-confirmation proposal to purchase the Durango, and Trustee's approval of that proposal, Debtor should be equitably estopped from reducing his plan payments. Simply put, because Trustee conditioned her approval of the Durango's acquisition on the debtors' alleged agreement that they would not thereafter reduce their mortgage or plan payments, Debtor is acting inequitably in proposing the Modification. The Court disagrees.

If appropriate in a bankruptcy case, estoppel is a defense that may be raised only by a party who relied upon the actions of another to his or

MEMORANDUM OF DECISION – 11

her detriment.  *Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 11.2 IBCR 90, 94 (Bankr. D. Idaho 2011), *aff'd* 13.1 IBCR 10, 13-14 (D. Idaho 2013).  The elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the other's conduct to his injury.  *In re Herter*, 13.1 IBCR at 14.

Because the Code expressly sets forth the requirements for plan modification, the Court doubts that an equitable estoppel defense is appropriate in this context.[7]  But even if the defense is available, Trustee does not argue that she would be personally prejudiced by a reduction in Debtor's plan payments.  Presumably, Trustee claims prejudice based

---

[7]  As discussed below, the Code requires that modified chapter 13 plans be "proposed in good faith." §§ 1325(a)(3), 1329(a).  While the Court need not decide such in this case, it would seem that the good faith requirement is sufficient to accommodate the sorts of equitable considerations which an estoppel defense is designed to promote without reliance on the Court's more general, equitable powers under § 105(a).

MEMORANDUM OF DECISION – 12

upon the reduction in payments to unsecured creditors contemplated by the Modification.  However, Trustee has not demonstrated the extent of that "injury," nor has she offered the facts to establish the other elements required for an estoppel defense to the Modification.

Trustee apparently added a handwritten note to the App. to Purchase submitted to her by the debtors providing that her assent to their vehicle purchase was subject to "no decrease in plan payments – or mortgage payments."  While the App. to Purchase shows it was approved by Trustee on February 13, 2014, there is nothing in evidence to suggest that Debtor knew about, or agreed to, Trustee's "condition" to the application.  Instead, it appears that Peggy completed the application, perhaps because the Durango was to be her vehicle.  Trustee's handwritten notation appears to have been a unilateral requirement added after the App. to Purchase was submitted by the debtors.  Indeed, the App. to Purchase does not bear the signature of either the debtors, nor is Trustee's "condition" initialed or in any way acknowledged by Debtor or Peggy. Exh. 204.

MEMORANDUM OF DECISION – 13

In addition, while the App. to Purchase was signed by Trustee on February 13, 2014, about six weeks later, on March 28, 2014, Debtor's mortgage lender filed the motion for approval of the loan modification. Dkt. No. 52. The evidence shows that Trustee was aware of the debtors' efforts to modify the mortgage at the same time the Durango purchase was being discussed. Exh. 203. Despite this, Trustee's "condition" makes no exception for lowering the mortgage payments to enable Debtor and Peggy to make the payments on the Durango. If Trustee was firm on her requirement that neither plan nor mortgage payments be lowered if the debtors purchased the Durango, Trustee would be expected to object to the proposed mortgage modification to defend her condition. Yet she did not. Having arguably allowed the debtors to once breach the condition she allegedly placed on the purchase of the Durango, the Court declines to allow Trustee to now selectively enforce the "no decrease in plan payments" provision in the name of equity.

2. *Good Faith*

To sustain a proposed modification of the plan under § 1329, Debtor

MEMORANDUM OF DECISION – 14

must show that it satisfies the confirmation requirements of § 1325(a).

Consequently, Debtor must prove the Modification has been submitted in

good faith for purposes of § 1325(a)(3).  Trustee argues that Debtor has

failed to prove his good faith, both as a general matter, because his

modified monthly expenses are excessive, and more particularly, because,

at the expense of his unsecured creditors, he is using the Modification to

retain and pay the liens against "luxury" goods.

### a.  Good Faith Generally

To determine a chapter 13 debtor's good faith (or lack thereof),

bankruptcy courts must "tak[e] into account the particular features of each

Chapter 13 plan."  *In re Yochum*, 96.2 I.B.C.R. 77, 78 (Bankr. D. Idaho 1996)

(citing *In re Porter*, 102 B.R. 773, 775 (9th Cir. BAP 1989)).  As the Ninth

Circuit has instructed, the good faith test "should examine the intentions

of the debtor and the legal effect of the confirmation of a Chapter 13 plan

in light of the spirit and purposes of Chapter 13."  *In re Hieter*, 09.1 IBCR

28, 30 (Bankr. D. Idaho 2009) (citing *Chinichian v. Campolongo (In re*

*Chinichian)*, 784 F.2d 1440, 1444 (9th Cir. 1986)).  More precisely, the Court

MEMORANDUM OF DECISION – 15

should consider:

> (1) whether the debtor has misrepresented facts in his or her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner;

> (2) the debtor's history of filings and dismissals;

> (3) whether the debtor's only purpose in filing for Chapter 13 protection is to defeat state court litigation; and

> (4) whether egregious behavior is present.

*Id*. (*citin*g *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002)).

Here, Trustee's objections to the Modification focus on whether Debtor is attempting to inequitably and unfairly manipulate the terms of the Bankruptcy Code to the prejudice of his creditors.  Based upon the facts, the Court agrees with Trustee.

### b.  Debtor's Ability to Pay and His Excessive Expenses

Trustee contends that Debtor should not be permitted to modify the confirmed plan because he has the ability to make the current payments, and his projected expenses are excessive and exceed IRS allowances. Trustee reminds the Court that, in this context, § 707(b)(2)(A) mandates

MEMORANDUM OF DECISION – 16

that a debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards," and shall be the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides.  Even if the IRS allowances implicated by § 707(b)(2)(A) and § 1325(b)(3) are inapplicable to modification in chapter 13 cases, the Court has previously held that it may consider the allowances as part of its determination of the reasonableness of a debtor's spending to assess a debtor's good faith under § 1325(a).  *In re Stitt*, 403 B.R. 694, 704 (Bankr. D. Idaho 2008).

Following Peggy's departure from the household, Debtor filed amended schedules showing his income and expenses.  Dkt. No. 64.  These schedules list his transportation expenses as $430 monthly, while the IRS allowance for transportation for a single person is $236.  Dkt. No. 64.  Debtor's expenses for home maintenance, food, housekeeping, laundry, clothing, entertainment, pet expenses, and home office supplies are listed in the amended schedules at $765 per month, which amount also

MEMORANDUM OF DECISION – 17

significantly exceeds the IRS allowance for a single man of $585. Dkt. No. 64.

Debtor has offered no evidence to suggest that there are any unusual, factual reasons justifying his deviation from the IRS allowances. Rather, it appears Debtor is simply resisting Trustee's efforts to conform his spending habits to those represented in the allowances. Absent a factual justification for them, the Court agrees with Trustee that Debtor's proposed expenses for these categories are excessive and unreasonable, and indicate a lack of good faith. This is reason enough for the Court to deny Debtor's Modification.

### c. Applicability of § 1325(b) to § 1329 Modifications

Trustee also contends that Debtor's attempt to use chapter 13 to retain and pay for unnecessary "luxury" goods – in Debtor's case, a large boat and a small tractor – evidences a lack of good faith. This argument, in turn, places the question of the applicability of § 1325(b) to plan modifications under § 1329(a) squarely before the Court.

Reviewing the adequacy of a debtor's proposed plan payments

MEMORANDUM OF DECISION – 18

requires navigation of several related Code provisions.  Section 1325(b)(1)

provides that, if the trustee objects, unless the proposed plan pays claims

in full, a debtor must commit all of his or her projected disposable income

to plan payments.  Section 1325(b)(2) specifies that a debtor's disposable

income is his or her current monthly income "less amounts reasonably

necessary to be expended — . . . for the maintenance or support of the

debtor or a dependent of a debtor."   Section 1325(b)(3) then provides that

"[a]mounts reasonably necessary to be expended under paragraph (2) . . .

shall be determined in accordance with subparagraphs (A) and (B) of

section 707(b)(2)."  In turn, § 707(b)(2) requires that current monthly

income shall be reduced by "[t]he debtor's average monthly payments on

account of secured debts."  § 707(b)(2)(A)(iii).  Under this scheme, then,

Debtor could deduct plan payments on secured debts from current

monthly income, and thus disposable income, without qualification.

Trustee acknowledges that, in calculating a debtor's projected

disposable income in weighing the confirmation of a debtor's original

plan, proposed payments on secured debts, even those incurred for a

MEMORANDUM OF DECISION – 19

debtor's purchase of "luxury" goods, are included.  However, Trustee

contends that a different standard applies to proposed modifications, and

that payments on luxury secured debts may be impermissible because

§ 1325(b)'s disposable income rules are inapplicable.

That a debtor's decision to pay secured debt for luxury goods may

not serve as the basis for questioning the debtor's good faith in proposing

a plan was firmly established in *Drummond v. Welsh (In re Welsh)*, 711 F.3d

1120 (9th Cir. 2013).  In response to Trustee's arguments, Debtor contends

that *In re Welsh* controls here, and prevents the Court from inquiring into

whether Debtor's proposal to pay secured claims through his modified

plan is, or is not, reasonable.  Debtor is incorrect.

In *Welsh*, the debtors proposed a chapter 13 plan which included

payments on secured claims for an expensive home, several vehicles, an

Airstream trailer, and two ATVs, while at the same time excluding Mr.

Welsh's social security income as a source for plan payments to unsecured

creditors.  *Id.* at 1123.  As proposed in the debtors' plan, after all plan

payments had been made, only about $14,700 would be paid toward the

MEMORANDUM OF DECISION – 20

debtors' $180,500 unsecured debt. *Id*. The trustee objected, asserting that the proposed plan was not submitted in good faith under § 1325(a)(3). In affirming the bankruptcy court's decision to confirm the plan, rejecting Trustee's arguments, the Ninth Circuit noted that the Code requires a debtor to deduct payments on secured debts in determining disposable income under § 707(b), and that "Congress did not see fit to limit or qualify the kinds of secured payments that are subtracted from current monthly income to reach a disposable income figure." *Id*. at 1135. As a result, this "forecloses a court's consideration of a debtor's . . . payments to secured creditors as part of the inquiry into good faith under 11 U.S.C. § 1325(a)." *Id*. Simply put, under *In re Welsh*, when a plan is being considered for confirmation, the nature and amount of a debtor's payments to secured creditors cannot be considered in the bankruptcy court's examination of the debtor's good faith.

In extending the holding of *Welsh* to plan modifications, Debtor contends that the "disposable income" analysis under § 1325(b) must surely apply to modified plans as well, lest "absurd" results follow. After

MEMORANDUM OF DECISION – 21

all, if any type of secured debt is acceptable in determining the adequacy of payments under the original plan for confirmation, how can those same debts be unacceptable when a debtor's circumstances change and a plan modification is proposed?

This Court considered a similar question, pre-*Welsh*, in a contest over the disposition of a debtor's post-confirmation social security payments. In *In re Hall*, during the course of their chapter 13 plan, one of the debtors became eligible to receive both a lump sum, and monthly social security benefits. 10.3 IBCR 77, 77 (Bankr. D. Idaho 2010). Because of this improvement in their income, the trustee sought to modify their confirmed plan to require that the social security funds be paid to debtors' creditors. The debtors contended that the disposable income requirements of § 1325(b) should be applied to a proposed modified plan under § 1329(a), and because social security benefits are not considered in a disposable income analysis, the plan should not be modified.

In denying approval of the modification, the Court cited *In re Sunahara*, wherein the BAP considered the applicability of § 1325(b) to plan

MEMORANDUM OF DECISION – 22

modifications under § 1329.  326 B.R. at 775-782.  In *Sunahara*, the panel

held that § 1329(b) "expressly applies certain specific Code sections to plan

modifications but does *not* apply § 1325(b).  Period."  *Id*. at 782 (emphasis

in original).  Recognizing that other courts have differed over this issue,

the Court in *In re Hall* concluded that "because the plain language of

§ 1329 does not include any reference to § 1325(b), even though § 1329

includes specific reference to several other Code sections, the requirements

of § 1325(b) should not be applicable to § 1329 modifications."  *In re Hall*,

10.3 IBCR at 79.  The relevant inquiry is, then, does *Welsh* suggest that the

BAP's holding in *Sunahara,* and this Court's decision in *In re Hall,* are no

longer viable?  It does not.

 *In re Welsh* was not a modification case.  Because confirmation of the

debtors' original plan was at issue, the Code requires that all aspects of

§ 1325 be examined when deciding whether the debtor's plan should be

confirmed, including subsection (b).  But the Code imposes a different,

more restricted, analysis for modification.  And *Welsh* does not require that

the Court disregard the express language of the Code specifically listing

MEMORANDUM OF DECISION – 23

which portions of § 1325 are applicable in judging a proposed modification

of a confirmed plan.  Because it was decided in a different context, *In re*

*Welsh* does not impact the reasoning in *In re Hall* or in *Sunahara*, both of

which were modification cases.  Accordingly, because the disposable

income provisions of § 1325(b) do not figure in the modification analysis,

Debtor cannot rely upon the disposable income test to support the

adequacy of his proposed plan payments in connection with a good faith

analysis of the Modification.  Instead, the Court may properly consider

whether the payments to his secured creditors are reasonable in assessing

his good faith in proposing to reduce his plan payments via a

modification.

### d.  Debtor's Retention of the Boat and Tractor

Debtor proposes to continue paying $98.42 per month to retain a

small tractor that, according to the evidence, he uses only occasionally in

the winter to plow his driveway.  While Debtor testified that, without the

tractor, he may have to pay someone $50-100 per snowfall to plow his

driveway, absent other proof, it is doubtful that doing so would be nearly

MEMORANDUM OF DECISION – 24

as expensive as paying almost $1,200 per year to the secured creditor to

retain the tractor.  Thus, Debtor has not made a persuasive case that it is

reasonable for him to retain the tractor and pay for it through the

Modification using funds otherwise available to pay unsecured creditors.

The Boat is an even more glaring problem for Debtor.  When the

total amount owed to the secured creditor is compared to its value, the

Boat is (pardon the pun) "underwater."  Paying the secured claim on the

Boat through his modified plan would cost Debtor – and, indirectly, his

unsecured creditors – about $5,000 per year going forward over the

remaining term of the plan.  Debtor offered no testimony about whether he

currently uses the Boat, only that he intends to live on it "after retirement."

As a practical matter, then, Debtor is proposing to pay for both his home,

and his future retirement home, with current chapter 13 plan payments.

Trustee, and the unsecured creditors, can be justifiably perplexed and

frustrated by Debtor's logic.  Debtor's approach evidences a lack of good

faith.

### *Conclusion*

MEMORANDUM OF DECISION – 25

That Debtor's financial situation has changed for reasons not of his own making does not alone establish that the Modification is an appropriate reaction to those changes. In proposing to modify his confirmed plan, Debtor invites an analysis of the good faith of his budget and spending habits. Because his monthly expenses are excessive, and his proposed plan payments to two secured creditors are unnecessary, the Modification fails the good faith test.

The Court will not dismiss Debtor's case at this time in order to allow him to contemplate this Decision and his situation. Presumably, Debtor must either decide to cure the plan payment delinquencies and continue the payments under the confirmed plan, or propose another, more realistic modification. If he does neither within a reasonable time, Trustee can again request dismissal. Trustee's motion to dismiss and Debtor's Motion to Modify will be denied in a separate order.

Dated:  January 4, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 26